Mr. Abadi, am I pronouncing your name correctly? Abadi, yes. So you will have, let's see, four minutes to start and then one minute for rebuttals, so whenever you're ready. Okay, I'm ready. Thank you. May it please the Court, my name is Aaron Abadi and I am the pro se appellant. And I don't have a lot of time, but I definitely don't want to go through all the issues. But I want to give a little bit of an understanding. I have a rare disability. I have a few disabilities, but this one that we're dealing with is a very rare disability. It's a sensory processing disorder. It's a sensory problem and I can't have glasses and I can't wear a hat and I can't put anything on my face with my ears and I would love to wear masks if I could, but put it around my ears, I can't. I finally arranged with the hospital, they were giving me a hard time, NYU, I would hold the mask in front of my face until they'd get me into a room quickly. The biggest problem is putting it on my ears. In this situation, it looks like, well, they have an exemption process, let's just go through it. And I had this problem with over 100 companies. 50 airlines, which I sued, and Amtrak, I couldn't go anywhere. Uber, Lyft, I could not go anywhere because I couldn't wear a mask and nobody wanted to care about the disability. Now, CDC guidance does say that someone who can't wear a mask, they have a disability that they can't wear a mask, they should be exempt. So the judge was saying, well, CDC wrote that you're allowed to have a whole exemption process. Yeah, but the CDC guidance can't change the law. The ADA law and the state law and the city law all require, if there is a direct threat, then you have to do an individualized evaluation. And in my case it was very simple. I had a simple letter, I sent it to them with the e-mail, and it said from my doctor, I have a sensory issue and I cannot wear a mask. And over here, what they're trying to tell me I have to do, they set up a policy. And I had that problem with so many companies. They set up a policy. And the policy is a complete deterrent. So 24-hour advance notice, so that in itself is unequal, right? Anyone else could just get on a bus. Medical documentation, I already sent the medical letter. So they're going to want me to go back to my doctor, and it has to be current, it says on it. Which means every time I go on a bus, I have to go back to the doctor and get a letter, which is just not going to happen unless I have my own private doctor. And then a COVID test, I wouldn't have minded doing that, but again, it's unequal. A new certificate for a return trip, that's where the problem is. And discretionary approval, that's where the big problem is. I had to go to California. Very important to get to California. I never got there. In order to get to California, I have to know that I could come back. So even if they let me on the bus going, it actually happened to me. Delta Airlines got me to Paris and didn't let me back. Thank God Air France helped me out, and after several hours, I found someone to help me. But, you know, the whole thing was a straight deterrence. It's not just, oh, they have rules. And if we had an opportunity for discovery, I'd be able to show that nobody was able to get through. Are these problems persisting? Do these problems persist even now, or are they all in the past? This particular problem is in the past, but I have other disabilities. I have a knee problem. I have an elbow problem. Unfortunately, I have a shoulder problem. And Greyhound has been a constant problem for anyone with disabilities. Good morning, Your Honors. Nicholas Chrysanthem Marshall Denny for Greyhound. The district court judge here properly dismissed the case in its entirety. The district court found that the plaintiff had no standing under the ADA. The ADA provides for injunctive relief, and Mr. Abadi was unable to show standing here because he didn't have a concrete claim that sought to see something to get relief in the future. The CDC did issue guidance. This case arose in the midst of the COVID pandemic, of course, and the CDC had issued guidance with respect to traveling. The procedure that Greyhound had in place directly correlated to that CDC guidance. This case arises out of Mr. Abadi sending one email with respect to requesting that he has a disability, a sensory disability, and he would like to travel without a mask. Within three hours, Greyhound sent him back an email indicating what the procedure was to do that. Mr. Abadi then did not engage in a cooperative dialogue. He basically just brought this lawsuit stating, and it's in his complaint, that the procedure was too complicated for him. So there was no cooperative dialogue here, and the court properly dismissed not only the ADA and the 1985-1986 rehabilitation claims. It also dismissed the appended state court claims. Mr. Abadi indicated, I think in the appeal somewhere, that the court did not take jurisdiction over it, but they did. Judge Rocon did rule on those claims and found them to be meritless. With respect to the ADA claim, Mr. Abadi admits in his complaint that by the time he brought it, the mask mandate had been lifted, so he was able to travel. With respect to the 1985 claim, which involved a conspiracy, Judge Rocon found that the claims of a conspiracy with respect to that claim were just conjectural and speculative, and properly invoked the intercorporate conspiracy doctrine. How current does a medical explanation have to be? I'm sorry? We heard from the appellant that the medical records that your policy requires be provided have to be current, and that therefore they may have to be updated at some frequency. Do you know what that frequency is? I don't know what that frequency is, but if it was not possible or that couldn't be accommodated to Mr. Abadi, that would have been dealt with during the cooperative dialogue process with respect to traveling, given his disability, and that was not done. But could your client provide greater transparency or certainty as to what will work and what will not work? I suppose they could have if there was a cooperative dialogue. In other words, if Mr. Abadi received, and the e-mail is there, it's in the pleadings, if Mr. Abadi had... But modern life is complicated, you understand, and if a person who needs an accommodation has to have a quote-unquote cooperative dialogue with everybody they're going to come in contact with in connection with the need for that accommodation, they're going to spend their lives doing nothing else but engaging in cooperative dialogue. And so maybe it's incumbent in some degree on the providers of public accommodation to offer some greater clarity as to what works. I suppose that could be, that is correct, Your Honor, but the problem is that you have to have some sort of procedure up front in order to do that. What this e-mail said is that they did provide for him to communicate with them. He gave them a number and an e-mail address and said if you have any further questions, please contact us. The law requires a cooperative dialogue. It's not that the company, you know, wants to do that because they want to impede everybody's progress. Of course, Greyhound and other common carriers such as airlines want people to travel on their buses and airplanes. So, I mean, they prefer not to do that. The problem is if you've got the CDC guideline, you've got the, not only the federal requirements, but very broad state and local city requirements. The New York City human rights law is even more broad than the state and federal laws and require a cooperative dialogue in order to determine what type of accommodation can be provided to the traveler. So, to your point, yes, I guess that they could try to be more transparent up front, but everybody's disability is different. So I don't know how, you know, they would be able to address everybody in one, you know, up front policy like that. So, with respect to the 1986 claim, because... Oh, I'm sorry. So I will do that, Your Honor. I think that, you know, that the court properly dismissed the claims and we respectfully request that the court follow. Thank you. Thank you. So the e-mail, it's one e-mail, but it's one e-mail to each of 100 different companies. The e-mail was sent to their ADA appliance office. They know the rules. They say, thank you for contacting. You are required to contact the ADA compliance department with the following documentation. And then to answer your other question, if outside of the five days, that same e-mail, it says, if your return trip falls outside the five days, then you need to apply for a new certificate, including producing a negative COVID-19 test taken in the last five days, but it also includes getting another certificate. I know because I got those demands from many airlines. It's just a way to deter it. And I can guarantee you that if I was allowed to go in front of a jury and get discovery, I can show you that nobody got through, or maybe three people. All right. Thank you. Thank you for listening and giving me this opportunity. Yes. Thank you for coming, and thank you both. And we will take this case under advisement as well.